Surveying, B.C., Colonial Shirty Company, Appalachia, United States of America, for the use and benefit of American Civil Construction, LLC, v. Hirani Engineering & Land Surveying, B.C., Colonial Shirty Company, Appalachia, Mr. Delaney, for the Appalachia Cross Appalachia, Hirani Engineering & Land Surveying, B.C., and Colonial Shirty Company, Mr. Browdy, for the Appalachia Cross Appalachia, American Civil Construction, LLC. Good morning, Council. Please be seated. Mr. Delaney, please proceed when you're ready. Thank you, Your Honors. May it please the Court, we're back before this Court for the second time to resolve the remaining issues that are left after an opinion and judgment from this Court in June of 2020 that affirmed the United States District Court's judgment in favor of a subcontractor, finding that the proper measure under D.C. law measuring damages was for an express contract was restitution damage. Would you state the record which party you're representing? I'm sorry, Your Honor. I represent the appellants, Colonial Shirty Company. With me is Mr. Schor, who represents Hirani. He will not be speaking unless the Court has any questions. Thank you. So, as I was saying, this Court previously affirmed the award of damages on a breach of contract restitution basis, finding that there was an express written agreement and remanded for additional fact findings on Colonial's first appellate point, which was whether or not the claim against the Miller Act surety was barred by the one-year limitation. We had our additional findings back. It didn't go Colonial's way. We have subsequently withdrawn. I thought you withdrew that. We did, Your Honor. What's the next issue? The third issue that we're going to be withdrawing today has to do with the evidentiary issues, which related to the damages award. That's correct, Your Honor. On the appeal, there's one issue remaining on the cross appeal, but as for Colonial's appeal, it's whether or not once the District Court has found and this Court has affirmed that breach of contract and express contract is the proper theory of recovery and has awarded damages on a restitution basis, whether or not it was reversible error for the District Court to also stray into the quasi-contract realm and award quantum Merowick damages against the Miller Act surety. It's our contention that that is reversible error. And what is the strongest authority? There is no authority that supports what the District Court did, Your Honor. So what is your authority? Our authority is that the Miller Act incorporates the general principles of suretyship, that the surety's liability is coextensive with that of its bond principle. That's a Johnson case that we cited. There are multiple Miller Act cases where the court says, yes, these general principles of suretyship exist in the Miller Act. All the Miller Act does is it creates effectively a mechanics lien statute for federal projects, and it gives those claimants who did work on those projects the right to pursue a surety. But in that surety, in recovering that surety, we have to determine which world we're living in, whether we're living in the express contract world or the quasi-contract world. Well, the District Court ruled on that. And what is wrong with its ruling? He said this is not in the nature of quasi-merit. It's an express contract. So this is a claim in the nature of restitution. Well, the District Court did both, Your Honor. The District Court kind of has one finger in each pie. The District Court said, as against Hirani, the proper measure of subcontract damages under the express contract is restitution. And this court has previously affirmed that. However, the District Court then strayed outside the contract world into quasi-contract world and awarded damages on quantum merit against the surety more than triple the amount of damages that it had previously awarded against the general contract. Well, I mean, for Hirani, it's a contract action under D.C. law, right? Yes, Your Honor. And for a colonial, it's an action under the Miller Act. That's correct, Your Honor. But that doesn't change what remedies are available to— Again, it could conceptually because you could have—I take it the question under the Miller Act is a question of federal law. 100 percent correct. Yes, Your Honor. But the case law still says we still look to the subcontract because the Miller Act—the idea behind the Miller Act is the reasonable value of labor and materials that the party provided to the contract. The courts across the country interpreting the Miller Act say you look to the express contract to determine what that reasonable value is. When there's already been a determination that's been affirmed, yes, the contract exists, hasn't been repudiated, one of the various—you know, it wasn't procured by fraud, something like that, where you would then leave express contract and go to quasi. Even under the Miller Act, you still look to the express language of the written agreement to determine what parties themselves determined the reasonable value of that labor and materials were. There are several cases in the record, including Metzger, which specifically said—the Ninth Circuit specifically said it's not the intention of Congress in enacting the Miller Act to go outside the scope of the underlying bond principles liability. Be that in express contract or quasi contract. There are times when quasi contract is the correct measure of recovery, but it's against both entities. So let me ask you then. Harani took the position before the district court that it was financially unable to pay. Is that correct? That's incorrect, Your Honor. Incorrect? Incorrect. When did it tell the district court that it stood ready, willing, and able to pay? It didn't tell the court that it stood ready, willing, and able to pay, nor did it tell the district court that it lacked the ability to pay. ACC has quoted language in the record about Harani's financial situation and that it was unable to pay. Judge, it's not in the record? He quoted it. I mean, if it's a misquote, that's one thing, but it is in the record. Judge, the only document that I'm aware of in the record is a document that Harani gave to the surety after the bid results were released, in which case Harani substantially underbid the contract. And in order to permit the surety to step in in the event Harani fell down and couldn't complete, because the surety provides not just the payment bond that ACC is suing under in this case, the surety also provides a performance bond to the government. And if the surety were to interfere with Harani's contract with the government, it could conceivably open itself to tortious interference with contract allegations. So, in order for the surety to issue the final bonds, it required Harani to send a document to the surety that effectively said, we lack the ability to finish this contract, we want the surety to go in. That's the only reference. What's wrong with that? I just explained the context of that, Your Honor. Harani is a functioning company to this day that's still bidding on and performing public works. That's after the fact. We're talking about the record that was before the district court when it ruled. And you just quoted the language. And I also explained the context of what that document was for, Your Honor. There was no testimony on that point.  So, where before this court have you said Harani stood ready, willing, and able to pay? I've never said it, but frankly, Judge, it's not an issue. You're saying the surety should not be, its liability should not be coterminous with that of the prime contractor, correct? No, Judge, the contrary. The surety's liability is coextensive with the general principal, the general contractor's bond liability. I think you're playing with words here, counsel. Not at all, Your Honor. With all due respect, let's assume you're not playing with words. But nevertheless, well, Mr. Bowen can clear this up, I assume, by the record. But I don't understand. If it's coextensive, then the only question is what? Does it owe anything? Or does it only owe what Harani failed to pay to ACC? Thank you, Your Honor. I see my time is almost up. You can answer, Judge Rogers. To answer your question, Judge Rogers, the surety's position is not that we don't owe ACC. We owe ACC zero. There's already been a determination under the existing subcontract. So it's the surety's position that the basic principles of surety law, which also apply through the Miller Act, are that the surety's liability is coextensive with Harani's liability. The judgment against the surety should be $586,000 and change, not the $2.something million entered by the district court on a quasi-contract theory. Thank you. Thank you, Your Honor. I have one question for you. It's just shifting gears for a second. Sure. There's the argument about the statute of limits, and then there's a related argument about hearsay, double hearsay. And I just want to understand your view, because argument one, you're no longer present. Correct. Based upon what happened with the remand findings, we weren't going to win. We withdrew it. In preparing for today, I realized we also have to withdraw the evidence question, because those rulings dealt with documents that were being used by the plaintiff to show what their last date of work is. If that issue's out, the evidence issues have to come out as well. I apologize for not discovering that until the last minute, but this is my first opportunity to withdraw it. So we can take your statement at this point as saying that you also withdraw issue three or four. Great. Three. Great. So you also withdraw issue three. One's out, three's out, two is in. That's the divergent award. Yeah. But three's out? Out. Okay. All right. I wanted to clarify that. Any more questions? Thank you. I don't think we have questions at this point. We'll give you a little rebuttal time. Thank you. Thank you. Mr. Brode? I think you're on mute. Or at least we're not able to hear you. This honorable court will now take a short recess. This honorable court is again in session. Please be seated. Mr. Brode? We can hear you now. Thank you. Please proceed. Thank you for allowing me to appear remotely. I'm sorry for the problem. To answer a judge, Raj, the pirani on supplemental appendix 1102 stated they were insolvent. A colonial took over all payments and made or didn't make all payments under their escrow account. All right. So the fact that our client, American Civil Construction, wasn't paid from February, no, from November of 2011 through termination was because colonial didn't pay them. Colonial controlled all the payments. Pirani is, in fact, a broke. They have a different company, which sounds like Pirani Engineering, because we've looked at that, run by Jim Pirani's son. As far as what we know, that they've always remained insolvent. But that's, I'm not a handler there, but that does answer Judge Raj's question. Council for Colonial argues, quote, the context close quote of the statement to which you are referring as not quite indicating what you're saying. My question here, though, is when the district court entered awards of 2,000,568,000. Was it clear from the judge's order? Those different amounts and the theory underlying them. Yes. What Judge Mehta was finding is that that amount that was awarded included all the change orders. If you go to the takeover agreement that was signed between the government and Colonial, they recognized it was $800,000 of change orders that went into the Colonial pot for a payment. Also, there is a letter written by Eric Pirani in response to the show cause letter dated February 25th, 2013, written by Pirani Engineering, saying that there were approximately a two year delay because of 77 change orders that was issued by the government in the amount exceeding $500,000. And that statement is found exactly on S.A. 2630. To date, completion of the project has been affected by the large amount of change orders, which has been required to be completed in excess of $500,000 issued by the government that has been directed and performed, increasing the project scope. So, is there any prejudgment interest included in that 568,000 award? In the award against Pirani, yes, there was. It was prejudgment interest issued on both, I believe by Judge Mehta, in the amount of approximately 6%. Right. So, what I'm getting at is there overlap there. In other words, the 568 was just supposed to be as a result of the change orders. But it also included, did it not, some award of prejudgment interest. Yes, it did. And how did it? But the award against Pirani was for only 85% of the base contract work. If one looks at the contract on Pirani, that Pirani signed with ACC, I call it ACC, American Construction. It just says in Article 4 on AA-279, Article 4, Changes in the Work, that you will proceed with the changes in the work. It doesn't say how you get paid. It doesn't say what normally every construction contract says how you get paid, whether you get paid a unit price, whether you get paid. It just says you have to proceed and you can't stop. And basically, our client, ACC, never stopped until the prime contract was terminated and they were directed to stop after the September 1st date by Pirani. Thank you. Can I ask you the following question? So, you don't take issue with the proposition that if the award against Colonial and the award against Pirani were the same work, that you can't recover against both of them for the same work, right? That would be a double recovery and that's just not something that the district court presumably intended to do and that's not something that you're entitled to. Yeah, it is certainly not the same work. One was 85% of the original scope of the work. The scope of the work was substantially expanded by the 27 modifications, suspensions, differing site conditions, and change directives, and the effective design that took an eight-month agreed-upon schedule. That's what Pirani and ACC agreed upon, an eight-month schedule, and it lasted for 25 months until it was terminated. And then, you know, Judge Mehta wrote three marvelous, well-defined, published opinions on this case. The only problem I had with Judge Mehta was on not covering the reasonable value of the supervision of the eight workmen that had to be done. On-site supervision is covered by labor under the Miller Act. Let me ask you, one of the key cases here is the Eighth Circuit opinion, which the district court does cite. And the district court there, Eighth Circuit Judge Coffman, he argues that the standard is, he goes through Supreme Court cases, other circuit cases, even cites some cases from this court for the proposition that the Miller Act is to be liberally construed to be sure these workers get paid. Judge Coffman writes for the Eighth Circuit, quote, Thus, the on-site supervisory work of a project manager falls within the purview of the Miller Act if such a superintendent did some physical labor at the job site or might have been called upon to do some on-site manual labor in the regular course of the job. Close quote. And that's at, his opinion, 972 Fed Second at 991. So, under that standard, what is it here that would bring Mr. Hollander under that test? Basically, the physical work, the contract requires supervision. On-site supervision requires also traffic control. And Mr. Hollander was, did the traffic control, did the supervision, the other one specifically. Your Honor, let me just get the actual subcontract out. Division traffic control layout work, he did the, he basically was the engineer doing the layout work, and he also has to certify that the work was done according to the plans and specifications. So, you think that is consistent? Oh, it says supervision. On O2, on Schedule B in the subcontract says you must provide project supervision, a superintendent, safety officer, and traffic control officer. And that was, in fact, Ed Hollander's duties to do all three on-site. But all the other cases, Buttonhead, and all the other cases, there are five other cases that were cited, is if, in fact, you are on-site and supervise or inspect the work, you have to inspect the work in order to certify that the workmen are in compliance with the plans and specifications. And that has to be done. All these cases were cited to the district court, and where do you think it made its error? I believe, as I told him, he made the error saying he had to do physical labor. You're talking about, I grew up in the industry, all the agreements with the unions say if you have nine or ten men, you have to have a superintendent or foreman who is non-working. Does that mean he doesn't get paid? This would cause tremendous havoc in the industry. I think what Judge Kaufman was getting at was how do you distinguish, and maybe it's between the supervisory work that is not covered by the Miller Act, namely what you might do back in your office, any sort of expertise you might have in connection with, I don't know, architectural drafting or something like that. So I understood his test didn't require physical labor, but it had to be. The distinction is on-site supervision and inspection versus off-site administrative work, reviewing shop drawings, doing takeoffs and stuff like that. That's not covered. And that's not covered under labor. But under the Miller Act, on-site supervision of the workmen, on-site land surveying is covered, on-site safety and officer and traffic control, that is covered. That's labor that you have to have in order to advance the prime contract. And it's that simple, Your Honor. And that's always been the criteria. I basically think that the district court here, Judge Giselle, for instance, wrote an opinion, that there's some common sense that has to be applied here. And I just wondered why the district court, who certainly enabled Judge, as they all are, didn't appreciate this point. Absolutely. Judge Giselle, you know, I argued the Mariani case, and the young man that's sitting here right now, Larry Scherer, was, you know, one of the counsels. It was 50 years ago when it was the Hirshhorn Museum that was being built that's now been torn down and now been rebuilt. So I'm 50 years older. But that was the criteria Judge Giselle said. The same argument is being made today. He says, okay, you paid him what was in the original contract. But that's not the criteria. The criteria is the unpaid reasonable value of the labor materials that you actually supplied. You know, it took two more years for Perachi to finish the construction. So let me ask you one other question. I'm sorry, Chief Judge. Please go ahead, Judge Rodgers. Please go ahead. One other question. And, um, you argue, and I want to be sure you continue to argue that this issue that is now being raised by colonial was never raised in the district court. Namely, yeah. And Judge Mehta never had a chance to distinguish what is being raised right now. We're off the line, by the way. We can still hear you so you can continue. Judge Mehta never had a chance to answer what is being raised now on appeal for the first time. In fact, when they objected to the damages that Judge Mehta proposed, they proposed some $800,000 for colonial and less than, I think, $300,000 for Harare. That was the same thing. They never said, okay, $300,000 for colonial and Harare. It was almost three times more that they proposed for colonial than Harare. Thank you. Thank you, Counsel. I think we have, I think my colleagues have additional questions for you. Thank you, Counsel. We appreciate your argument this morning. Mr. Delaney, we'll give you two minutes for rebuttal. Thank you, Your Honor. Just three quick points I'd like to address that were raised by Mr. Browdy. First and foremost, with regard to the waiver issue, might as well get that one out of the way front. The issue has to do with the divergent awards against surety on one theory of recovery and against the general contractor on a second theory of recovery. That issue did not arise until the judgment was issued. The first action colonial took after that judgment was issued was finally filing a notice of appeal. There's no way of arguing that. Did it not have an opportunity to file a motion for reconsideration? We certainly had the opportunity to, Your Honor, but not the obligation. I understand that. But, you know, the district court, as he begins his opinion, says almost, these are my words, not his word. I can't believe I'm being asked to examine this voluminous finding and ruling once again. And he said, I'm simply not going to examine the minutia of, you know, whether a bottle of Gatorade was properly in the award. And so that's why I'm getting to the point that the district court thought he had covered everything that was raised. And if it was never raised before the district court, then on what basis could we reverse at this stage? Again, Your Honor, we timely appealed it for the first time after the issue arose. I'd like to briefly touch on the issue on whether or not the awards were for the same work. The complaint, the second amended complaint, which was Mr. Browdy's first entry into this litigation, there were attorneys who represented plaintiff prior, sought the same amount of damages, $2.074 million, against both Irani on a breach of contract basis and against Colonial on a Miller Act basis. It's always been the same stuff under different theories. It was never. And the district court didn't award it. And the district court didn't award it, just like the district court specifically rejected the same arguments that Mr. Browdy just made regarding the supervisory work allegedly performed by Mr. Holland. You didn't raise that at all in your opening argument. So I think we have the argument. Thank you very much, Your Honor. Any more questions? I don't think so. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Henderson, Rogers